UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES ZIMMERMANN,

Plaintiff,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS, *et al.*,

Defendants.
_______________________________/

Case No. 1:12-cv-751

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Dr. David Arkesteyn, Christopher Hengesbach,[1] Michigan Department of Corrections (MDOC) and David Pratt (docket no. 16).

**I. Plaintiff's complaint**

Plaintiff, James Zimmerman, commenced this action by filing a civil rights complaint. Plaintiff's complaint named the following defendants: MDOC; Dr. Brian Ameel, psychiatrist at Pugsley Correctional Facility (MPF); Dr. David Arkesteyn, Unit Chief, Outpatient Mental Health at MPF; David Pratt, deputy warden at MPF; and Christopher Hengesbach, a corrections officer at MPF. Compl. at p. 2 (docket no. 1). Plaintiff alleged the following claims against defendants (in his words):

> The Michigan Department of corrections has employed the defendants in this case and are liable for their actions. Deputy Warden David Pratt is the boss over the

[1] This defendant is referred to in the complaint as "corrections officer Hegensbach".

> remaining defendants. David Arkesteyn is the boss of Dr. Brian A. Ameel. I saw Dr. Ameel in November 2011. Dr. Ameel wanted me to admit to the crimes I was convicted of. I would not admit or deny anything as my case is in the appeals process. This angried Dr. Ameel and Dr. Ameel threatened me, by saying "I hope you like getting flopped (denied parole), because I'm going to make sure you never go home." I left his office and filed a grievance over his actions. I also, requested to no longer be treated by Ameel. Over the next several months, Dr. Ameel continued to harass, threaten & embarrass me. I filed numerous grievances. My grievances angried Dr. Ameel so much, he attempted to have me paneled into involuntary treatment. David Arkesteyn (Dr. Ameel's boss) knew what Dr. Ameel was doing and did nothing to stop him. In fact, Arkesteyn encouraged Dr. Ameel & sat in on the involuntary hearing. Arkesteyn also denied my grievances. I was in voluntary treatment and had the right to refuse further treatment. At the involuntary hearing, the hearing was canceled because Dr. Ameel did not read me, my rights. This angried Dr. Ameel so much, he ordered David Arkesteyn to shut off the tape recording and then Dr. Ameel threatened me again in front of witnesses, including Arkesteyn. Approx. 10 days after this hearing, Dr. Ameel showed up at my housing unit. I was on crutches for an injured ankle. I saw Dr. Ameel & turned around & tried to walk away. Dr. Ameel chased after me & began screaming my rights to another involuntary hearing in front of other inmates. Dr. Ameel blocked my path & I tried to go the other way. When I turned around, corrections officer Hegensbach was blocking my movement in that directions. I attempted to go around Hegensbach and he slammed me against a wall and started pushing me. While Hegensbach was pushing me, I felt someone hit me from behind. When I turned around, it was Dr. Ameel who had just assaulted me and he grabbed by crutches from underneath my arms, causing further injury to my ankle. Approx. 2 hours before this assault, I had a meeting with Deputy Warden David Pratt. I asked deputy Pratt to keep Dr. Ameel away from me, after I explained everything Dr. Ameel had done. I asked for protection from Dr. Ameel & Deputy Pratt left me in a hostile environment. The assault by Dr. Ameel & Corrections officer Hegensbach caused my security level to be raised, making good on his threat of being denied parole. I also had my property stolen because of this.

Compl. at pp. 3-4 (docket no. 1). Plaintiff seeks the following relief: damages for the assault that caused him injuries; damages for his stolen property; and "to have this taken off my record, so the parole board has no reason to deny me parole." *Id.* at p. 5.

As an initial matter, the court needs to identify the claims as alleged in plaintiff's complaint. The court has a duty to read a *pro se* plaintiff's complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F.2d 1220, 1223-24 (6th Cir. 1987). In

reviewing the sufficiency of plaintiff's complaint, it is well established that "*pro se* complaints are held to even 'less stringent standards than formal pleadings drafted by lawyers.'" *Kent*, 821 F.2d at 1223, quoting *Haines*, 404 U.S. at 520. However, the duty to be "less stringent" with *pro se* complaints does not require this court to conjure up unpled allegations. *McDonald v. Hall*, 610 F.2d 16, 19 (lst Cir. l979). *See also Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434, 437 (6th Cir. l988) ("A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."), quoting *O'Brien v.DiGrazia*, 544 F.3d 543, 546 n. 3 (1st Cir. 1976). A plaintiff must allege with at least some degree of particularity the acts which constitute the violation of his rights. *See Morgan*, 829 F.2d at 12.

Viewing plaintiff's complaint broadly and indulgently, the court finds that he alleged four causes of action. First, plaintiff alleged a First Amendment retaliation claim against Dr. Ameel which occurred in or about November 2011. Second, plaintiff alleged an Eighth Amendment excessive force claim against defendants Dr. Ameel and Corrections Officer Hengesbach which occurred "several months" later. Third, plaintiff alleged that Deputy Warden Pratt failed to protect him from the use of excessive force in violation of the Eighth Amendment. Fourth, plaintiff alleged that Dr. Arkesteyn was liable for Dr. Ameel's actions in his capacity as the doctor's supervisor, which includes a claim that Dr. Arkesteyn denied a grievance related to Dr. Ameel's actions.

## II. Defendants' motion for summary judgment

### A. Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any

right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

This matter is before the court on defendants MDOC, Dr. Arkesteyn, Corrections Officer Hengesbach and Deputy Warden Pratt's motion for summary judgment. *See* Motion (docket no. 17).[2] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present

[2] Defendant Dr. Ameel has filed an answer and a separate motion for summary judgment which is not yet ripe for decision. *See* Answer (docket no. 19); Motion (docket no. 21).

> significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Here, defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

**B. MDOC's Eleventh Amendment Immunity**

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir.1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341(1979), and the State

of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986). The Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 Fed. Appx. 646, 653-54 (6th Cir.2010) ("Because sovereign immunity extends to state instrumentalities, and the MDOC is an arm of the State of Michigan, the MDOC is entitled to sovereign immunity on the [plaintiff's] § 1983 claim") (internal citation and quotation marks omitted); *Sims v. Michigan Department of Corrections*, 23 Fed. Appx. 214, 215 (6th Cir. 2001) ("Because the MDOC is a state agency and the state of Michigan has not consented to civil rights suits in federal courts, the MDOC is entitled to Eleventh Amendment immunity"). In addition, the State of Michigan (on its own or acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Board of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Department of State Police*, 491 U.S. 58 (1989)). Accordingly, defendant MDOC's motion for summary judgment should be granted.

**C. Failure to Exhaust**

**1. Exhaustion requirement**

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This

> has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

**2. MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not

receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff's grievances

Plaintiff gave no specific date as to when Dr. Ameel retaliated against him, other than to allege that events occurred in and after November 2011. *See* Compl. Plaintiff does not allege the date of the alleged assault, other than to state that it occurred sometime after November 2011, i.e., "over the next several months." *Id.* In his uncontested affidavit, Corrections Officer Hengesbach gives the date of the alleged assault as Tuesday, February 7, 2012, the date he accompanied Dr. Ameel to see plaintiff. *See* Hengesbach Aff. at ¶¶ 1-3. This date corresponds with plaintiff's grievances and responses which indicate that plaintiff was involved in an alleged assault on that date and was transferred from MPF to Oaks Correctional Facility (ECF).

Defendants have presented evidence that since May 2009, plaintiff filed six grievances through Step III: ECF-12-02-0466-19e ("466"); ECF-12-03-0916-01i ("916"); ECF-12-02-613-01i ("613"); EC12-02-0463-12d3 ("463"); MPF-11-11-1066-12c ("1066"); and MPF-11-07-0680-12d1 ("680"). *See* MDOC Prisoner Step III Grievance Report (docket no. 17-7 at pp. 2-3).[3]

Plaintiff exhausted two grievances which related to his confinement at MPF, nos. 680 and 1066. Plaintiff's grievance no. 680 relates to incidents in May and July, 2011, with respect to having plaintiff's pacemaker checked on a regular basis. *See* Grievance no. 680 (docket no. 17-7 at p. 7). Grievance no. 1066 is problematic, because the first page of the grievance which defendants submitted to this court is such a poor copy as to be illegible. *See* Grievance Form (docket no. 17-7

[3] The court notes that plaintiff did not object to this evidence. *See* Fed. R. Civ. P. 56(c)(2) ("[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence").

at p. 21). However, a response to grievance no. 1066, dated December 5, 2011, refers to the subject matter of the grievance as relating to a meeting with a psychiatrist on November 16, 2011. *Id.* at p. 23. The Step III grievance response from March 8, 2012, indicates that this grievance related to a psychologist's unprofessional action during an encounter on November16, 2011. *Id.* at p. 19. Based on this record, the issue raised in grievance no. 1066 involved a psychologist's allegedly unprofessional conduct while providing services during an interview with plaintiff on November 16, 2011.

It appears for the reasons below that the incident occurred on February 7, 2012. The uncontested affidavit of Corrections Officer Hengesbach relates that plaintiff's altercation with Dr. Ameel and Hengesbach occurred on that date. *See* Hengesbach Aff. at ¶ 3 (docket no. 17-4). In his affidavit, Hengesbach states that on that date: he accompanied Dr. Ameel to see plaintiff; that plaintiff became agitated and began to swing his crutch at Hengesbach; that Dr. Ameel grabbed the crutch; that Hengesbach told plaintiff to turn around to that he could be cuffed; that plaintiff balled up his first in apparent preparation to strike Dr. Ameel; that Hengesbach grabbed plaintiff and began to struggle with him; that two other officers assisted Hengesbach in gaining control of plaintiff; and that while plaintiff could have walked away at any time, he chose to stay and be argumentative with the doctor. *Id.* Furthermore, Grievance no. 463, directed against Dr. Crompton for failing to treat plaintiff's injuries, pertains to injuries which arose during an alleged assault on February 7, 2012. *See* Grievance no. 463 (docket no. 17-7 at p. 27). The Step II response included the following statement:

> On 2/7/12, per administrative note in the record, "Patient was transferred to ECF due to an assault on a unit officer and an attempted assault on the MPF psychiatrist.

*Id.* (docket no. 17-7 at p. 26). This response is consistent with Corrections Officer Hengesbach's affidavit, which placed the alleged assault as occurring on February 7, 2012. Based on these facts, grievance no. 1066 was filed long before the February 7, 2012 incident which gave rise to plaintiff's excessive force claim against Dr. Ameel and Corrections Officer Hengesbach.

None of the other grievances which were filed at ECF relate to the claims alleged in plaintiff's complaint. Grievance no. 466 related to an incident on February 7, 2012, in which plaintiff reported missing property when he arrived at ECF. *See* Grievance no. 466 (docket no. 17-7 at p. 33). Grievance no. 613 relates to a separate incident on February 7, 2012, which involved plaintiff's request for an indigent store list. *See* Grievance no. 613 (docket no. 17-7 at p. 18). Finally, grievance no. 916 relates to an incident on March 20, 2012, which also involved plaintiff's request for items on the indigent store list. *See* Grievance no. 916 (docket no. 17-7 at p. 13).

**a. Excessive force claim against Corrections Officer Hengesbach**

None of plaintiff's grievances relate to an alleged assault by Corrections Officer Hengesbach which occurred on February 7, 2012. Based on this record, plaintiff did not properly exhaust a grievance against defendant Hengesbach with respect to the alleged use of excessive force. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendant Hengesbach is entitled summary judgment for lack of exhaustion.

**b. Failure to protect claim against Deputy Warden Pratt**

Similarly, none of plaintiff's grievances relate to Deputy Warden Pratt's failure to protect plaintiff from the alleged assault by Corrections Officer Hengesbach and Dr. Ameel. Based on this record, plaintiff did not properly exhaust a grievance against Deputy Warden Pratt with respect to his claim that Pratt failed to protect him from the use of excessive force. *Jones*, 549 U.S.

at 218; *Woodford*, 548 U.S. at 90-91. Defendant Pratt is also entitled to summary judgment for lack of exhaustion.

**c. Claims against Dr. Arkesteyn**

Finally, plaintiff did not exhaust a grievance against Dr. Arkesteyn with respect to Arkesteyn's purported failure to supervise or prevent Dr. Ameel from the alleged use of excessive force. Because grievance no. 1066 is partially illegible, it is impossible to determine whether it was directed against Dr. Arkesteyn. It appears that grievance no. 1066 was probably not directed against Dr. Arkesteyn because he was scheduled to interview plaintiff in order to respond to the grievance. *See* Grievance no. 1066 (docket no. 17-7 at p. 23). Based on this record, plaintiff did not properly exhaust a grievance against Dr. Arkesteyn with respect to his claim that Arkesteyn failed to supervise or prevent Dr. Ameel from using excessive force. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendant Dr. Arkesteyn is entitled summary judgment for lack of exhaustion on the excessive force claim.

**III. Qualified Immunity**

**A. Elements of qualified immunity**

Defendant Dr. Arkesteyn also seeks summary judgment on grounds of qualified immunity.[4]

> Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the

---

[4] Because plaintiff did not properly exhaust his claims against Corrections Officer Hengesbach and Deputy Warden Pratt, it is unnecessary to address the issue of qualified immunity as to them.

> defendant violated a constitutional right; and (2) the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 816, 172 L.Ed.2d 565 (2009).

*Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011). The court may exercise its sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

**B. Dr. Arkeysteyn**

Here, the first prong is lacking. Plaintiff's claim against Dr. Arkesteyn, arises from his alleged failure to stop Dr. Ameel's actions in Arkesteyn's capacity as Dr. Ameel's supervisor. However, this is not a proper basis for liability under § 1983. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Department of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). An alleged constitutional violation must be based upon "active unconstitutional behavior." *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). A supervisor's liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

**1. Dr. Arkesteyn did not encourage Dr. Ameel's conduct**

Here, plaintiff has alleged that Dr. Arkesteyn encouraged Dr. Ameel after the meeting in November 2011, "sat in on the involuntary hearing," and denied his grievances. Plaintiff does not allege how Dr. Arkesteyn encouraged Dr. Ameel to retaliate against him after the November 2011 meeting, other than to reference an "involuntary hearing." In his uncontested affidavit, Dr.

Arkesteyn explained his involvement with plaintiff's case. Contrary to plaintiff's allegation, Dr. Arkesteyn states that he was not Dr. Ameel's supervisor. Arkesteyn Aff. at ¶ 3 (docket no. 17-2). Rather, Dr. Ameel was an employee of Mental Health Management (MHM), a private company providing services to the MDOC, with his direct supervisor being an employee of MHM. *Id.* Dr. Ameel was part of the Outpatient Mental Health Team, and as the supervisor of that team, it was Dr. Arkesteyn's responsibility to ensure that Dr. Ameel's work was within the scope of the MDOC Policies and Procedures. *Id.* at ¶¶ 1-5. Dr. Arkesteyn was aware that Dr. Ameel was treating plaintiff, and he discussed clinical issues related to plaintiff with Dr. Ameel. *Id.* at ¶ 6. Dr. Arkesteyn further stated:

> 7. To that accord, I was aware that prisoner Zimmerman was not happy with the treatment decisions of Dr. Ameel. I was also aware that prisoner Zimmerman had notified Dr. Ameel that he (Zimmerman) wished to withdraw from treatment and not receive further mental health services. Lastly, I knew that Dr. Ameel's professional clinical opinion of prisoner Zimmerman, based on Amee1's education, training and experience, was that prisoner Zimmerman had a mental illness that required treatment and that the involuntary treatment process should be pursued.
>
> 8. As the Chairman of prisoner Zimmerman's involuntary treatment panel hearing committee, at which Dr. Ameel sits on as the treating psychiatrist, it was my decision to discontinue the hearing and tum off the tape recorder when it was discovered that the prisoner's rights regarding the hearing had not been read to him prior to the panel hearing by Dr. Ameel. It is required that the prisoner must be made aware of his rights as part of the hearing process and without it, the panel process cannot proceed. Dr. Ameel's behavior regarding the point where Prisoner Zimmerman's rights were not read to him as required was not encouraged or condoned by me. In fact, I notified my supervisor as well as Dr. Ameel's supervisor of the matter after the hearing.

Arkesteyn Aff. at ¶¶ 7-8.

Based on this record, there is no evidence Dr. Arkesteyn was Dr. Ameel's immediate supervisor. Nevertheless, to the extent that Dr. Arkesteyn had authority to supervise Dr. Ameel as part of the Outpatient Mental Health Team, the uncontested evidence demonstrates that Dr.

Arkesteyn did not encourage nor condone Dr. Ameel's behavior and reported Ameel to both Arkesteyn's supervisor and Ameel's supervisor. Under these circumstances, there is no evidence to establish that Dr. Arkesteyn directly participated in any unconstitutional activity against plaintiff in his capacity as the supervisor of the Outpatient Mental Health Team. Dr. Arkesteyn is entitled to qualified immunity with respect to plaintiff's retaliation claim.

### 2. Dr. Arkeysteyn's response to a grievance

Finally, to the extent that plaintiff seeks a retaliation claim against Dr. Arkesteyn for reviewing plaintiff's grievances, this claim fails. A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). Accordingly, Dr. Arkesteyn is entitled to summary judgment with respect to this claim.

## IV. Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by defendants Dr. Arkesteyn, Corrections Officer Hengesbach, MDOC and Deputy Warden Pratt (docket no. 16) be **GRANTED** and that these defendants be dismissed from this action.

Dated: July 3, 2013

/s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).