UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES ZIMMERMANN,

   Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

   Defendants.
            /

Case No. 1:12-cv-751

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on "Defendant, Dr. Brian A. Ameel's Motion to Dismiss or for summary judgment" (docket no. 21). Dr. Ameel's motion is unopposed.

**I. Plaintiff's complaint**

Plaintiff, James Zimmerman, commenced this action by filing a civil rights complaint naming the following defendants: the Michigan Department of Corrections (MDOC); Dr. Brian Ameel, psychiatrist at Pugsley Correctional Facility (MPF); Dr. David Arkesteyn, Unit Chief, Outpatient Mental Health at MPF; David Pratt, deputy warden at MPF; and Christopher Hengesbach, a corrections officer at MPF. Compl. at p. 2 (docket no. 1). Plaintiff alleged the following claims against defendants (in his words):

> The Michigan Department of corrections has employed the defendants in this case and are liable for their actions. Deputy Warden David Pratt is the boss over the remaining defendants. David Arkesteyn is the boss of Dr. Brian A. Ameel. I saw Dr. Ameel in November 2011. Dr. Ameel wanted me to admit to the crimes I was convicted of. I would not admit or deny anything as my case is in the appeals process. This angried Dr. Ameel and Dr. Ameel threatened me, by saying "I hope you like getting flopped (denied parole), because I'm going to make sure you never

> go home." I left his office and filed a grievance over his actions. I also, requested to no longer be treated by Ameel. Over the next several months, Dr. Ameel continued to harass, threaten & embarrass me. I filed numerous grievances. My grievances angried Dr. Ameel so much, he attempted to have me paneled into involuntary treatment. David Arkesteyn (Dr. Ameel's boss) knew what Dr. Ameel was doing and did nothing to stop him. In fact, Arkesteyn encouraged Dr. Ameel & sat in on the involuntary hearing. Arkesteyn also denied my grievances. I was in voluntary treatment and had the right to refuse further treatment. At the involuntary hearing, the hearing was canceled because Dr. Ameel did not read me, my rights. This angried Dr. Ameel so much, he ordered David Arkesteyn to shut off the tape recording and then Dr. Ameel threatened me again in front of witnesses, including Arkesteyn. Approx. 10 days after this hearing, Dr. Ameel showed up at my housing unit. I was on crutches for an injured ankle. I saw Dr. Ameel & turned around & tried to walk away. Dr. Ameel chased after me & began screaming my rights to another involuntary hearing in front of other inmates. Dr. Ameel blocked my path & I tried to go the other way. When I turned around, corrections officer Hegensbach was blocking my movement in that directions. I attempted to go around Hegensbach and he slammed me against a wall and started pushing me. While Hegensbach was pushing me, I felt someone hit me from behind. When I turned around, it was Dr. Ameel who had just assaulted me and he grabbed by crutches from underneath my arms, causing further injury to my ankle. Approx. 2 hours before this assault, I had a meeting with Deputy Warden David Pratt. I asked deputy Pratt to keep Dr. Ameel away from me, after I explained everything Dr. Ameel had done. I asked for protection from Dr. Ameel & Deputy Pratt left me in a hostile environment. The assault by Dr. Ameel & Corrections officer Hegensbach caused my security level to be raised, making good on his threat of being denied parole. I also had my property stolen because of this.

Compl. at pp. 3-4 (docket no. 1). Plaintiff seeks the following relief: damages for the assault that caused him injuries; damages for his stolen property; and "to have this taken off my record, so the parole board has no reason to deny me parole." *Id.* at p. 5.

Viewing plaintiff's complaint broadly and indulgently, the undersigned previously determined that plaintiff alleged four causes of action. First, plaintiff alleged a First Amendment retaliation claim against Dr. Ameel which occurred in or about November 2011. Second, plaintiff alleged an Eighth Amendment excessive force claim against defendants Dr. Ameel and Corrections Officer Hengesbach, which occurred "several months" later. Third, plaintiff alleged that Deputy

Warden Pratt failed to protect him from the use of excessive force in violation of the Eighth Amendment. Fourth, plaintiff alleged that Dr. Arkesteyn was liable for Dr. Ameel's actions in his capacity as the doctor's supervisor, which included a claim that Dr. Arkesteyn denied a grievance related to Dr. Ameel's actions. On August 12, 2013, the Court granted summary judgment to defendants Hengesbach, Pratt, Arkesteyn and MDOC, leaving Dr. Ameel as the sole remaining defendant. *See* Order (Aug. 12, 2013) (docket no. 31).

In the present motion, Dr. Ameel suggests that the only claim raised against him involved the alleged assault. Specifically, Dr. Ameel states that while the complaint includes an allegation of "verbal exchanges" between plaintiff and the doctor, the complaint only seeks damages arising from the alleged assault (in plaintiff's words):

> (1) to be awarded damages for the assault that caused me injuries.
> (2) to be awarded damages for my stolen property.
> (3) to have this taken off my record, so the parole board has no reason to deny me parole.

Compl. at p. 5.

Upon reviewing the complaint, the Court concludes that plaintiff did, in fact, allege a claim for retaliation. Plaintiff alleged that he angered Dr. Ameel during the meeting in November 2011, that he filed a grievance against Dr. Ameel related to the meeting, and that "over the next several months" Dr. Ameel: harassed, threatened and embarrassed plaintiff; attempted to have plaintiff "paneled into involuntary treatment;" and assaulted plaintiff. To state a claim for retaliation, a plaintiff must allege that (1) he engaged in protected conduct; (2) an adverse action was taken against him; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013), citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th

3

Cir.1999) (en banc). Plaintiff's allegations satisfy each of these elements: (1) plaintiff alleged that he engaged in protected conduct by filing a grievance against Dr. Ameel regarding the November 2011 meeting; (2) plaintiff alleged that Dr. Ameel took adverse action against him; and (3) plaintiff alleged a causal connection between plaintiff filing a grievance against Dr. Ameel and the doctor's subsequent actions including the alleged assault.

## II. Defendant's motion for summary judgment

### A. Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendant Dr. Ameel seeks summary judgment on plaintiff's claim due to lack of exhaustion.[1] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

---

[1] Although Dr. Ameel refers to this motion as a "motion to dismiss or for summary judgment," the motion is briefed as one for summary judgment.

4

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Defendant Dr. Ameel's motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

5

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after

the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff's grievances

The Court summarized plaintiff's grievances filed in this matter when it addressed a previous motion for summary judgment:

> Plaintiff gave no specific date as to when Dr. Ameel retaliated against him, other than to allege that events occurred in and after November 2011. *See* Compl. Plaintiff does not allege the date of the alleged assault, other than to state that it occurred sometime after November 2011, i.e., "over the next several months." *Id.* In his uncontested affidavit, Corrections Officer Hengesbach gives the date of the alleged assault as Tuesday, February 7, 2012, the date he accompanied Dr. Ameel to see plaintiff. *See* Hengesbach Aff. at ¶¶ 1-3. This date corresponds with plaintiff's grievances and responses which indicate that plaintiff was involved in an alleged assault on that date and was transferred from MPF to Oaks Correctional Facility (ECF).
>
> Defendants have presented evidence that since May 2009, plaintiff filed six grievances through Step III: ECF-12-02-0466-19e ("466"); ECF-12-03-0916-01i ("916"); ECF-12-02-613-01i ("613"); EC12-02-0463-12d3 ("463"); MPF-11-11-1066-12c ("1066"); and MPF-11-07-0680-12d1 ("680"). *See* MDOC Prisoner Step III Grievance Report (docket no. 17-7 at pp. 2-3).

7

Plaintiff exhausted two grievances which related to his confinement at MPF, nos. 680 and 1066. Plaintiff's grievance no. 680 relates to incidents in May and July, 2011, with respect to having plaintiff's pacemaker checked on a regular basis. *See* Grievance no. 680 (docket no. 17-7 at p. 7). Grievance no. 1066 is problematic, because the first page of the grievance which defendants submitted to this court is such a poor copy as to be illegible. *See* Grievance Form (docket no. 17-7 at p. 21). However, a response to grievance no. 1066, dated December 5, 2011, refers to the subject matter of the grievance as relating to a meeting with a psychiatrist on November 16, 2011. *Id.* at p. 23. The Step III grievance response from March 8, 2012, indicates that this grievance related to a psychologist's unprofessional action during an encounter on November16, 2011. *Id.* at p. 19. Based on this record, the issue raised in grievance no. 1066 involved a psychologist's allegedly unprofessional conduct while providing services during an interview with plaintiff on November 16, 2011.

It appears for the reasons below that the incident occurred on February 7, 2012. The uncontested affidavit of Corrections Officer Hengesbach relates that plaintiff's altercation with Dr. Ameel and Hengesbach occurred on that date. *See* Hengesbach Aff. at ¶ 3 (docket no. 17-4). In his affidavit, Hengesbach states that on that date: he accompanied Dr. Ameel to see plaintiff; that plaintiff became agitated and began to swing his crutch at Hengesbach; that Dr. Ameel grabbed the crutch; that Hengesbach told plaintiff to turn around to that he could be cuffed; that plaintiff balled up his first in apparent preparation to strike Dr. Ameel; that Hengesbach grabbed plaintiff and began to struggle with him; that two other officers assisted Hengesbach in gaining control of plaintiff; and that while plaintiff could have walked away at any time, he chose to stay and be argumentative with the doctor. *Id.* Furthermore, Grievance no. 463, directed against Dr. Crompton for failing to treat plaintiff's injuries, pertains to injuries which arose during an alleged assault on February 7, 2012. *See* Grievance no. 463 (docket no. 17-7 at p. 27). The Step II response included the following statement:

> On 2/7/12, per administrative note in the record, "Patient was transferred to ECF due to an assault on a unit officer and an attempted assault on the MPF psychiatrist.

*Id.* (docket no. 17-7 at p. 26). This response is consistent with Corrections Officer Hengesbach's affidavit, which placed the alleged assault as occurring on February 7, 2012. Based on these facts, grievance no. 1066 was filed long before the February 7, 2012 incident which gave rise to plaintiff's excessive force claim against Dr. Ameel and Corrections Officer Hengesbach.

None of the other grievances which were filed at ECF relate to the claims alleged in plaintiff's complaint. Grievance no. 466 related to an incident on February 7, 2012, in which plaintiff reported missing property when he arrived at

8

ECF. *See* Grievance no. 466 (docket no. 17-7 at p. 33). Grievance no. 613 relates to a separate incident on February 7, 2012, which involved plaintiff's request for an indigent store list. *See* Grievance no. 613 (docket no. 17-7 at p. 18). Finally, grievance no. 916 relates to an incident on March 20, 2012, which also involved plaintiff's request for items on the indigent store list. *See* Grievance no. 916 (docket no. 17-7 at p. 13).

Report and Recommendation at pp. 8-10 (July 3, 2013) (docket no. 23) (footnote omitted), *adopted* in Order (Aug. 12, 2013) (docket no. 31).

The Court notes that plaintiff provided a legible copy of grievance no. 1066 as part of his 193-page objection to the July 3, 2013 Report and Recommendation. The grievance lists the date of the incident as November 16, 2011, and provides in pertinent part:

> Grievance is on Brian A. Ameel, M.D. I sent a kite requesting to see someone regarding nightmares I have been having. I have suffered from nightmares for years. Dr. Ameel said "I'm having them because of a guilty conscious [sic]." He then proceeded to ridicule, harass, embarrass, humiliate, and call me names (delusional, scary, etc.) because I would not admit to being guilty of the crimes I was convicted. . .

Grievance no. 1066 (docket no. 27-1 at p. 5). This additional information clarifies that grievance no. 1066 was filed in response to a November 16, 2011 meeting between plaintiff and Dr. Ameel.

### 4. The alleged assault

The Court previously determined that plaintiff failed to file a grievance related to the alleged assault of February 7, 2012, stating in pertinent part:

> None of plaintiff's grievances relate to an alleged assault by Corrections Officer Hengesbach which occurred on February 7, 2012. Based on this record, plaintiff did not properly exhaust a grievance against defendant Hengesbach with respect to the alleged use of excessive force. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendant Hengesbach is entitled summary judgment for lack of exhaustion.

Report and Recommendation at p. 10 (July 3, 2013) (docket no. 23), *adopted* in Order (Aug. 12, 2013) (docket no. 31). Similarly, based on this record, none of plaintiff's grievances relate to an

alleged assault by Dr. Ameel which occurred on February 7, 2012, and plaintiff did not properly exhaust a grievance against Dr. Ameel either with respect to the alleged assault. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Dr. Ameel's motion for summary judgment for lack of exhaustion on this claim should be granted.

### 5. Retaliation

While Dr. Ameel's motion seeks summary judgment based upon lack of exhaustion, the motion does not explicitly address exhaustion of plaintiff's retaliation claim against the doctor. In previous filings, however, defendants have demonstrated that grievance no. 1066 is the only grievance relevant to this litigation, and that this grievance only addressed Dr. Ameel's conduct during the November 16, 2011 meeting. *See* Report and Recommendation at pp. 8-10 (July 3, 2013) (docket no. 23) (footnote omitted), *adopted* in Order (Aug. 12, 2013) (docket no. 31). There is no evidence that plaintiff properly exhausted a grievance regarding Dr. Ameel's alleged retaliation after November 16, 2011. Based on this record, plaintiff did not properly exhaust a grievance against Dr. Ameel with respect to the alleged use of excessive force. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, Dr. Ameel is entitled to summary judgment for lack of exhaustion on this claim.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by defendant Dr. Ameel (docket no. 21) be **GRANTED** and that this action be terminated.

Dated: February 24, 2014 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

10

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).